**In the Matter of Robert E. MOORE.**

**No. 1281S343.**

Supreme Court of Indiana.

Sept. 26, 1983.

Thurman M. DeMoss, Franklin, for respondent.

Sheldon A. Breskow, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

This proceeding is before this Court on a single count Verified Complaint filed by the Disciplinary Commission of the Supreme Court pursuant to Admission and Discipline Rule 23, Section 12. As provided in Admission and Discipline Rule 23, a Hearing Officer was appointed, conducted a hearing, and has tendered his findings. The Respondent now seeks review of these findings by this

Court. Both parties have filed briefs in support of their respective positions.

Before reviewing the evidence of alleged misconduct, a general challenge to this disciplinary proceeding must be addressed. In his petition for review Respondent asserts that procedural due process is not met by the use of the preponderance of evidence test set forth in this Court's disciplinary rules. Citing *Santosky v. Kramer* (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599. Respondent argues that a finding of misconduct involving unlawful behavior should be predicated, at least, on a "clear and convincing evidence" standard of proof.

*Santosky v. Kramer,* supra, involved the termination of parental rights; applying the factors set forth in *Mathews v. Eldridge* (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, a majority of the United States Supreme Court concluded that a "fair preponderance of the evidence standard" in such proceeding was inconsistent with due process.[1] In the course of this analysis, the Court noted that an intermediate standard of proof (clear and convincing)[2] has been mandated where the individual interests at stake in a particular state proceeding are both "particularly important" and "more substantial than the mere loss of money" or necessary to preserve fundamental fairness in a government-initiated proceeding that threatened an individual with "a significant deprivation of liberty" or "stigma". *Santosky v. Kramer,* 455 U.S. at 756, 102 S.Ct. at 1395.

The interests at stake in the authority cited by Respondent are the fundamental liberty interests associated with the freedom of choice in matters of family life. The interests at stake in the present proceeding are those associated with the judicial license to practice law in this jurisdic-

---

1. The Court summarized the three factors considered as: the private interest affected by the proceeding; the risk of error created by the chosen procedure; and the countervailing government interest supporting use of the challenged procedure. *Santosky v. Kramer,* 455 U.S. at 754, 102 S.Ct. at 1394.

2. Standard of proof generally has been described as a continuam with three levels ranging from a "preponderance of the evidence test" to a "beyond reasonable doubt" test. The "clear and convincing evidence" test is the intermediate standard, although many varying descriptions may be associated with the definition of this intermediate test. See, *Addington v. Texas,* infra.

tion. While the latter is important, it pales in significance when compared to the liberty interests incidental to family life, the adverse social consequence of civil commitment [*Addington v. Texas* (1979), 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323], the deprivation incidental to deportation [*Woodby v. IMS* (1966), 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362] or the overtones of denaturalization [*Chaunt v. U.S.* (1960), 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120]. This difference clearly distinguishes the present case from the cited authority.

■ An attorney disciplinary action is neither criminal nor civil. This type of proceeding is not intended for the purpose of punishment, but rather to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and public from unfit persons. *In re Roberts* (1983), Ind. 442 N.E.2d 986. The effective administration of justice, the fair resolution of disputes, and the preservation of individual liberties through advocatory representation relate in good measure to the effectiveness of this disciplinary process.

■ The procedures adopted by this Court to charge, hear and review issues of professional misconduct recognize the delicate balance of the competing interests. A Respondent is afforded discovery, given timely and complete notice, allowed to confront accusers in an open hearing and permitted a full review by this Court. *In re Roberts,* Supra. We are inclined to conclude that the Constitution of the United States does not mandate the application of a rigidly defined standard of proof in disciplinary proceedings where the attorney charged with professional misconduct is afforded a fair opportunity to respond to such allegation.

However, even though an intermediate standard of proof may not be required, we are pursuaded that such standard is an appropriate description of the level of confidence the fact finder should have in the correctness of his conclusions, whether or not there is a quantitative distinction. This intermediate standard of proof, "clear and convincing", more reasonably conforms to this Court's analysis of the nature of the disciplinary process and follows the weight of authority. See, *Matter of Palmer,* (1979) 296 N.C. 638, 252 S.E.2d 784 and cases cited therein.

■ In this jurisdiction the ultimate fact finder in an attorney disciplinary proceeding is this Court. *In re Callahan,* (1982) Ind., 442 N.E.2d 1092; *In re Murray,* (1977) 266 Ind. 221, 362 N.E.2d 128, appeal dismissed, 434 U.S. 1029, 98 S.Ct. 758, 54 L.Ed.2d 777; *In re Pawlowski,* (1959) 240 Ind. 412, 165 N.E.2d 595. This decision is reached through an examination of all matters before the Court. In light of the above noted consideration of the appropriate standard of proof, this Court will find misconduct only upon clear and convincing evidence.

The remaining issues raised by Respondent relate to the application of this review process and the determination of the facts upon which to judge misconduct.

Respondent is charged with possessing more than 30 grams of marijuana on August 22, 1980, in violation of I.C. 35–48–4–11 which provides that a person is guilty of such crime when he knows that marijuana is growing on his premises and fails to destroy the marijuana plants. The Disciplinary Commission charges that such conduct is violative of Disciplinary Rules 1–102(A)(1), (3) and (6) of the *Code of Professional Responsibility for Attorneys at Law.*

Many of the findings of the appointed Hearing Officer are not challenged. Accordingly, adopting such findings of fact, this Court now finds that the Respondent is an attorney admitted to practice in this state and is thusly subject to this Court's professional disciplinary authority. In the summer of 1980, while serving as a Deputy Prosecuting Attorney in Jennings County, the Respondent lived part-time in a furnished rental home in Scipio, Indiana. These premises included a vegetable garden and a detached garage building. On August 22, 1980, an Indiana State Police Officer observed marijuana growing within the rows of corn planted in Respondent's vege-

table garden. With the assistance of two other individuals, this officer removed approximately thirty marijuana plants ranging from "waist high" to five feet, four inches in height. These matters were reported to the Prosecuting Attorney of Jennings County and the Respondent was summoned to the Prosecutor's Office. The Respondent signed a consent to search his premises. During such search, marijuana was found drying on the floor in the garage, found in the bottom of a tool cabinet in the garage and found in a bag in the kitchen cabinet. Two envelopes of seeds were found in a dresser drawer. The growing marijuana amounted to 554.5 grams and that found in the garage amounted to 194.1 grams.

On August 23, 1980, Respondent was charged with knowingly possessing marijuana in an aggregate weight of more than thirty grams. Shortly, thereafter, Respondent's son, David Moore, in the company of Respondent and an attorney representing both father and son, met with the Prosecutor. Respondent's son informed the Prosecutor that he, the son, was responsible for the marijuana growing on the premises. On August 28, 1980, David Moore was charged with growing and cultivating marijuana in an aggregate amount of more than thirty grams and on September 4, 1980, the charges against the Respondent were dismissed. On February 9, 1981, David Moore pleaded guilty to possessing less than thirty grams of marijuana; for which, he was fined Two Hundred Dollars and given a one year suspended sentence.

Respondent argues that this evidence is insufficient to substantiate that Respondent knowingly grew marijuana. Additionally, Respondent directs the Court's attention to evidence in the record wherein it was reported that these premises were never locked, that there was open access, and that Respondent invited others to pick crops in his garden without limitation. Based on this evidence, Respondent urges a conclusion that the evidence is not sufficient to find misconduct.

We have examined this record and considered the arguments of Respondent. While there is evidence which supports Respondent's theory of the case, we find that the weight of the evidence in toto is to the contrary. In addition to the undisputed factual matters set forth above, upon examination of the evidence presented for review, we note that on or about August 20, 1980, the Respondent was observed smoking what was alleged to be marijuana. This incident was reported by a female Title IVD welfare client invited to Respondent's residence. It was her allegations which led the State Police to make the initial inquiry; her testimony as to the location of the marijuana on the premises was consistent with the search eventually conducted. The Respondent was described as a good gardner; he was repeatedly observed in his garden on numerous occasions during the summer of 1980; neighbors were not aware that he had a son nor were they able to relate occasions when this son may have worked in the garden. The marijuana plants had been growing approximately two and one-half months when discovered. Seeds, identified by the arresting officers as marijuana seeds, were found in two envelopes among the Respondent's personal effects in a dresser in his bedroom.

In view of the above noted findings this Court now concludes that, while the ultimate responsibility for the marijuana plants found on Respondent's premises may be uncertain, the evidence clearly and convincingly establishes that the Respondent knew this marijuana was growing on his premises and that he failed to destroy the plants. Such conduct is contrary to I.C. 35–48–4–11 and, accordingly, is violative of Disciplinary Rules 1–102(A)(1), (3) and (6) of the *Code of Professional Responsibility for Attorneys at Law.*

Having determined that the Respondent engaged in misconduct, we now must decide the appropriate sanction. In this regard, we must note at the onset that this Respondent acted in controversion of the laws of the State of Indiana at the time he was serving a public trust to enforce such laws.

This betrayal of public trust scorns the orderly and impartial administration of justice. Our judicial system cannot function without respect for the integrity of the process and confidence in the enforcement of behavioral norms defined through democratic procedures. All participants of our judicial system must bear the responsibility of maintaining this respect.

A lawyer who betrays his public trust and ignores his responsibility for the impartial administration of justice, not only suggests to the public an absence of integrity, but also demonstrates an unfitness to continue in the practice. Under such circumstances this Court must respond in a manner which clearly evinces our responsibility to preserve the integrity of the judicial process. Accordingly, this Court concludes that the strongest disciplinary sanction available must be imposed.

It is therefore ordered that, by reason of the misconduct found under the Verified Complaint filed in this cause, the Respondent be, and he hereby is disbarred from the practice of law in this state.

Costs of this proceeding are assessed against the Respondent.