In the Matter of Anna
Cotton HAILEY.

No. 982S332.

Supreme Court of Indiana.

Feb. 5, 1985.

⚬─58

James H. Voyles, Jr., Indianapolis, for respondent.

William G. Hussman, Jr., Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

The Respondent in this case, Anna Cotton Hailey, was charged by an Amended Verified Complaint for Disciplinary Action filed by the Disciplinary Commission of this Court. The Complaint was heard before a Hearing Officer who has now submitted his findings of fact and conclusions of law. The overwhelming portion of his findings is based upon and incorporates a stipulation of facts entered into by the parties.

This Court has reviewed all matters submitted herein and now finds that the Respondent is an attorney who was admitted to the Bar of the State of Indiana in September, 1960. A two-count complaint charges her with fifteen incidents of neglect of estate and guardianship matters and with engaging in conflict of interest.

Under Count I, we find, in accordance with the stipulation of the parties, that the Respondent was employed as the attorney and Executrix for the *Estate of Beulah Alumbaugh* in the Madison Superior Court. The estate was opened on December 30, 1963. The Respondent took no action until ordered by the court to appear and show cause why she should not be removed for failure to administer the estate on January 23, 1969. The Respondent filed an inventory and appraisement and a petition to sell real estate. After May 9, 1969, the Respondent failed to take any further action in administering the estate until June, 1981, despite an order of the court entered on July 16, 1970, to close the estate or be held in contempt and a letter from the judge written on January 23, 1980, requesting that the Respondent promptly close the estate. In June, 1981, an Amended Inheritance Tax Schedule and an Amended Assessor's Report were filed. The Respondent was removed as personal representative on March 28, 1983.

In 1969, Respondent became the attorney for the *Guardianship of Florence Martz*, in the Madison Superior Court. Other than filing an inventory, appraisement, and petition to sell real estate in October, 1975, the Respondent took no action in administering the guardianship. The ward died in 1976 and the Respondent became attorney for the *Estate of Florence Martz*, which was opened in September of 1976. Other than selling real estate of the decedent in October, 1977, and June, 1981, the Respondent has taken no action in administering the

estate. She has failed to close both the guardianship and the estate.

The Respondent was the attorney for the *Estate of William Persinger* which was opened in the Madison Circuit Court in April of 1977. After the proof of publication was filed on April 21, 1977, the Respondent took no other action in this matter.

In 1976, the Respondent was employed as attorney for the *Guardianship of Miriam Ertel* in the Madison Circuit Court. As such, she took no action in administering the guardianship. The ward died in 1976 and the Respondent was also retained as attorney for the estate. The estate was opened on May 3, 1978, in the Madison Circuit Court and proof of publication was filed on May 19, 1978. Since that time, the Respondent has taken no further action in administering the estate and has failed to close both, the guardianship and the estate. The court closed the guardianship on February 15, 1984.

The Respondent was employed as attorney for the *Estate of Charles Robinson* in the Madison Circuit Court on September 18, 1970. She filed an inventory on July 17, 1972, pursuant to an order of the court, but for approximately ten years thereafter took no other action in the estate. She resigned as attorney for this estate on October 13, 1983.

In another guardianship/estate matter in the Madison Circuit Court, that of *Fred Wilson*, the Respondent was first employed in 1975 as attorney for the guardianship and, after the death of the ward in 1978, as attorney for the estate. In September of 1977, the Respondent filed an affidavit in lieu of inventory and a petition for order authorizing mortgage. She took no other action in the guardianship. The estate was opened on June 9, 1978, and proof of publication was filed on June 27, 1978. The Respondent took no other action in the estate; she has failed to close both the guardianship and the estate.

In 1968, the Respondent was employed as attorney for the *Guardianship of Everett Addington* in the Madison Circuit Court. She has taken no action in administering this guardianship.

In 1971, the Respondent also became attorney for the *Guardianship of Mary Kinser* in the Madison Superior Court. The Respondent has taken no action in this guardianship.

A guardian was appointed in October of 1976 in the *Guardianship of Herbert Montcastle* in the Madison Superior Court and the Respondent was employed as attorney for the guardianship. In September of 1980, the Respondent filed a final report and petition to terminate the guardianship. Objections to the final report were filed on September 23, 1980, and are still pending. The guardianship remains open.

In 1978, the Respondent became attorney for the *Guardianship of Audia McMahon* in the Madison Circuit Court. The Respondent has failed to take action in administering this guardianship for over four years.

In 1979, the Respondent became attorney for the *Guardianship of Lola Fox* in the Madison Circuit Court. In November of 1979, the Respondent filed an inventory and appraisement and a petition to sell real estate. Thereafter, she has taken no other action.

Under Count II, we find that in 1976 the Respondent was employed to probate and administer the estate of *Helen Knuckles*. The Respondent did not probate the estate. The only asset was equity in some real estate worth less than $5,000. On behalf of all the heirs, the Respondent attempted to complete the sale of certain real estate to one of the heirs, Kathleen Swift and her husband, who had entered into a contract for the purchase of the real estate prior to Knuckles' death. The Swifts failed to make payment on the contract and the other heirs called for its cancellation. During this time, Kathleen Swift retained the Respondent to represent her in a dissolution of marriage action. In April of 1980, the heirs, other than Swift, discharged the Respondent and requested the release of all documents. The Respondent delivered the requested documents in February, 1981.

From the foregoing findings we conclude that the Respondent neglected numerous guardianships and estates thereby violating Disciplinary Rule 6–101(A)(3) of the *Code of Professional Responsibility for Attorneys at Law.* Such conduct is prejudicial to the administration of justice and adversely reflects on Respondent's fitness to practice law; it is violative of Disciplinary Rules 1–102(A)(5) and (6). The findings under Count II further establish that the Respondent accepted employment and continued multiple employment when her independent professional judgment was likely to be adversely affected, in violation of Disciplinary Rules 5–105(A) and (B) of the *Code of Professional Responsibility for Attorneys at Law.*

In assessing the appropriate sanction, this Court considers the nature of the violation, the specific act of the Respondent, its·impact on the public, this Court's responsibility to preserve the integrity of the Bar, and the risk, if any, to which we will subject the public by permitting the Respondent to continue in the profession or be reinstated at some future date. *In re Ewers* (1984), Ind., 467 N.E.2d 1184; *In re Aungst* (1984), Ind., 467 N.E.2d 698; *In re Welke* (1984), Ind., 459 N.E.2d 725; *In re Callahan* (1982), Ind., 442 N.E.2d 1092; *In re Gorman* (1978), 269 Ind. 236, 379 N.E.2d 970.

The misconduct described in this case presents a pattern of neglect encompassing many years. From 1963, the Respondent repeatedly undertook to represent guardianships and estates while failing to carry out her professional duties in the same sort of matters. It is also apparent that the public was often and repeatedly subjected to such misconduct. The Respondent's actions are a disservice to the public, the clients and the beneficiaries who have been directly affected by Respondent's negligence; her actions have served to congest the system and to impede the judicial process. We also note the Hearing Officer's findings as to Respondent's poor health and other personal problems during much of the time in question. Though such circumstances may be taken into consideration in assessing an appropriate sanction, they cannot excuse Respondent's failure to close an estate for almost twenty years, as in the Estate of Beulah Alumbaugh, or any of the other instances of neglect. With the foregoing considerations in mind, and in light of the findings of fact, this Court determines that the Respondent should be suspended from the practice of law for a period of one (1) year.

IT IS, THEREFORE, ORDERED that the Respondent, Anna Cotton Hailey, be suspended from the practice of law in Indiana for a period of one (1) year, beginning March 1, 1985.

Costs of this proceeding are assessed against the Respondent.